# IN THE COURT OF APPEALS OF IOWA

No. 21-0927
Filed September 22, 2021

**IN THE INTEREST OF J.S.-M. and A.S.-M.,**
**Minor Children,**

**J.S.-M., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Lee (North) County, Ty Rogers, District Associate Judge.

A father appeals the termination of his parental rights to two children. **AFFIRMED.**

Alan N. Waples, Burlington, for appellant father.

Thomas J. Miller, Attorney General, and Natalie Deerr, Assistant Attorney General, for appellee State.

Alicia Stuekerjuergen, West Point, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Greer and Badding, JJ.

**BADDING, Judge.**

A father appeals a juvenile court order terminating his parental rights to seven-year-old J.S.-M. and five-year-old A.S.-M.[1] He contends (1) the State failed to prove the statutory grounds for termination, (2) termination is not in the children's best interests, and (3) his strong bond with the children should preclude termination.

After conducting a de novo review of the record, we find clear and convincing evidence to support termination of parental rights under Iowa Code section 232.116(1)(f) (2021). *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). We agree with the juvenile court that the children's best interests are served by moving toward permanency with their aunt and uncle, and their need for long-term stability and safety overrides the closeness of the parent-child relationship. Thus, we affirm the termination order.

*I.* ***Background Facts and Proceedings***

The Iowa Department of Human Services (DHS) intervened in late August 2019 after receiving a report that J.S.-M. and A.S.-M., then ages five and three, were riding bicycles near a grocery store without supervision. During that investigation, the mother threatened to kill two DHS workers, and she was arrested for harassment. After being released from jail, the mother admitted using illegal drugs while the children played outside. Based on that information, the juvenile court removed the children from her care in early September. The children have lived in foster care since then.

---

[1] The mother's parental rights were also terminated. She is not a party to this appeal.

At the temporary removal hearing, the court learned the father was incarcerated and could not be reached by his attorney. Given his unavailability and the mother's mental-health and substance-abuse issues, the court adjudicated J.S.-M. and A.S.-M. as children in need of assistance (CINA) under Iowa Code sections 232.2(6)(c)(2), (n), and (p). Neither parent attended the October CINA hearing.

That same month, the father was released from prison into the Fort Des Moines halfway house, where he remained through February 2020. While living there, he had regular phone calls and visits with the children. He obtained employment as part of his probation, but changed jobs twice and struggled to secure his own housing. By summer, he was no longer working and was living with his girlfriend in a small apartment. Despite noting a bond between the father and children, and observing positive interactions between them, service providers worried about his ability to provide the children with a long-term stable home environment and financial support.

After an August 2020 permanency hearing, the court granted a six-month extension based on the father's progress during visits with the children. In the meantime, the court directed him to obtain housing and employment, participate in services, cooperate with visitation, and comply with random drug testing. But the father did the opposite. Over the next several months, he was inconsistent with visits and grew hostile toward DHS workers and service providers. His interactions with the children moved to fully supervised because he refused to submit to drug testing. He also did not participate in any recommended mental-health services or parenting classes. On top of that, the father continued to lack employment and

financial stability. After nineteen months of services, the case manager reflected that "[t]he only stability he's shown is his current home."

In February 2021, the State petitioned to terminate the father's parental rights. Both DHS and the guardian ad litem agreed that moving toward permanency was the right course. When asked what he believed should be the next step, the father responded: "I would like for them to be placed with me and, you know, I would like for DHS to stay a part of this, you know, and see how things go to where if there is ever—if there's a concern or danger it could be addressed." Declining to grant another extension, the juvenile court terminated his parental rights under Iowa Code section 232.116(1)(e) and (f). The father appeals.

## II.    Analysis

### A.    Statutory Grounds

First, the father challenges the statutory grounds for termination. Although he addresses both alternatives on appeal, we may affirm on any ground supported by the record. *W.M.*, 957 N.W.2d at 313. We choose to focus on section 232.116(1)(f). As is often the case, the father challenges only the fourth element of this ground—whether the children could be returned to his home at the present time. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "present time" to mean "the time of the termination hearing").

The father asserts the State's evidence did not support the juvenile court's finding that "[he] was likely to neglect his children" or that he suffered from unaddressed mental-health and substance-abuse issues. Put differently, he argues the record lacks clear and convincing evidence of an adjudicatory harm

within the meaning of section 232.102. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016).

Contrary to the father's assertion, the juvenile court considered more than concerns of neglect, mental health, and substance abuse. In addressing this fourth factor, the court pointed to his noncompliance and poor participation in services as root causes for why the children could not be returned to his custody. The court found no reason to believe that, after months of refusing services and attending only a few in-person visits, the father was ready to be a full-time parent.

We reach the same conclusion on our de novo review. Despite DHS's repeated efforts, the father did not follow through on services or prioritize his interactions with the children. His visits were sporadic and inconsistent throughout the CINA case. He failed to appear for drug testing numerous times despite being told that his interactions with the children would remain supervised until he provided a negative drug screen. He then completely disengaged in services during the six months that he should have been working toward reunification, going from July 2020 until February 2021 without any in-person visits with the children.

By the time of the termination hearing in April 2021, the father's progress remained "stagnant." *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (noting that "once the limitations period lapses, termination proceedings must be viewed with a sense of urgency"). There were ongoing concerns about his housing, employment, and parenting skills. He had only recently reengaged in visitation. Given his limited interactions with the children, neither the case manager nor the service provider could attest to his ability to care for them on a day-to-day basis. In fact, they were doubtful that he had developed the necessary

skills for effective long-term parenting. Rather than counter that viewpoint, the father acknowledged that he had never cared for the children on his own and requested continued DHS involvement. By his own reflection, J.S.-M. and A.S.-M. could not have safely returned to his care at the time of the termination hearing. For these reasons, termination was proper under section 232.116(1)(f).

### B.     Best Interests

Next, we must decide whether termination is in the children's best interests. In making this determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (alteration in original) (quoting Iowa Code § 232.116(2)). Under the governing statute, we may also consider whether the children have "become integrated into the foster family to the extent that the child[ren]'s familial identity is with the foster family." Iowa Code § 232.116(2)(b).

The father asserts termination is not in the children's best interests when "[t]here is no need to wait for either parent to become able to parent these children." He emphasizes that "[he] has a home that is suitable for the children" and "a significant other who is fully employed," pointing out that "they both have a good relationship with these children."

While those are positive attributes that may factor into the best-interests determination, the "defining elements" are the children's safety and their need for a permanent home. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially). At the time of the termination hearing, the father had been

living with his girlfriend for less than one year. There was no evidence besides the father's own testimony that his living situation was stable and suitable for the children in the long-term. Further, most of his interactions with the children were supervised and via videoconferencing. So we have no way to confirm the safety of his home environment without DHS involvement.

In that same vein, the father's disengagement made it difficult for service providers to assess his ability to meet the physical, mental, and emotional needs of the children. And his testimony reveals that he did not know what their needs were. When asked why he relied on service providers to communicate the children's basic needs, the father responded: "When they're in someone else's custody, . . . I mean they're not with me on a daily basis. How am I to know what they need?" Given these deficiencies, the juvenile court correctly refused to delay permanency "on the mere hope" that the father would soon learn to become a self-sufficient parent.

Since their removal in 2019, both J.S.-M. and A.S.-M. have developed a strong attachment to their foster family, as well as their maternal aunt and uncle, according to their therapist. The aunt and uncle have expressed a desire to adopt the children and can provide them with a safe, stable, and nurturing home. After considering the relevant factors, we conclude termination is in the children's best interests.

### C. Exceptions to Termination

As his third and final claim, the father argues the juvenile court should have considered his bond with the children as a reason not to terminate his parental rights under Iowa Code section 232.116(3)(c). This paragraph allows the court to

avoid termination if clear and convincing evidence shows "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

By all accounts, the father developed a close bond with the children during visits. J.S.-M., in particular, grew attached to him. But that attachment has not been healthy for J.S.-M. When the father failed to consistently attend or participate in visits, J.S.-M. started displaying behavioral issues. His first-grade teachers reported that his demeanor changed and he became disrespectful. Similarly, his foster parents noticed he would exhibit child-like behavior after visits. Both J.S.-M. and A.S.-M. have also needed counseling for their anxiety stemming from the CINA case. Based on these facts, we agree with the juvenile court's assessment that none of the permissive statutory factors outweigh the children's need for permanency. *See W.M.*, 957 N.W.2d at 315. Thus, we affirm the termination order.

**AFFIRMED.**